The Full Commission reviewed this matter based on the record of the proceedings before Deputy Commissioner Wanda Blanche Taylor and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission affirms the holding of the Deputy Commissioner and enters the following Opinion and Award.
 **********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing on March 11, 1997 and in a Pre-Trial Order as:
 STIPULATIONS
1. The parties are subject to the Workers' Compensation Act.
2. Plaintiff was employed by defendant-employer from on or about March 19, 1996 to July 4, 1996.
3. The parties stipulated into evidence, without need for further authentication or verification the following documents:
 — Exhibit 1 — Form 18s dated July 2, 1996 and August 7, 1996 filed with the Commission in July 1996 and August 1996, respectively in IC 645390 (June 25, 1996 date of injury);
 — Exhibit 2 — Form 18 dated December 23, 1996 filed with the Commission in December 1996 in IC 683222 (July 3, 1996 date of injury);
 — Exhibit 3 — Form 19 dated June 26, 1996 completed by defendant-employer for IC# 645390 (June 25, 1996 date of injury);
— Exhibit 4 — Form 22 dated January 28, 1997;
 — Exhibit 5 — City of Raleigh Employee Accident/Exposure Incident Report for June 25, 1996 accident;
 — Exhibit 6 — City of Raleigh Supervisor's Accident Investigation Report for June 25, 1996 accident;
 — Exhibit 7 — Form 61 dated January 9, 1997 and filed with the Commission in January 1997 in IC #683222 (July 3, 1996 date of injury);
 — Exhibit 8 — OSHA 200 Log produced by City of Raleigh for months of June and July 1996; and
 — Exhibit 9 — 21 pages of medical records from Raleigh Urgent Care Center, P.A., Wake Medical Center, ProActive Therapy, Inc. and G. Hadley Callaway, M.D.
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections raised by counsel at the depositions of Dr. Callaway and Ms. Dixon are ruled upon in accordance with the law and Opinion and Award in this matter.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing on March 11, 1997, plaintiff was a thirty-four year old male with an eleventh grade education. Prior to becoming employed with defendant-employer, plaintiff had been employed as an assistant manager for Texaco which among his other job duties included doing paper work for inventory. Plaintiff also had experience as a motorcycle mechanic, in the car detail business, as an electrician and plumber, as a sheet rock hanger and as a dump truck driver.
2. On October 30, 1995, plaintiff first became employed by defendant-employer as a seasonal worker in the City Streets Department. On February 13, 1996, plaintiff applied for a full-time position with the city's Sanitation Department and was hired on February 19, 1996. Plaintiff spent the first two weeks doing recycling pickups and then transferred to garbage collection.
3. As the city has collection routes each day, attendance of its sanitation workers is very important and employees who accrue more than four unexcused absences or more than ten excused absences are subject to termination. On March 6, 1996, within two weeks approximately of plaintiff's full-time employment with defendant-employer, he received a warning about his unsatisfactory attendance. At that time he was warned of further disciplinary action or termination if his poor attendance continued.
4. On June 25, 1996, after continued absences (nine excused absences and seven unexcused absences) plaintiff was given notice that it was the intention of the Solid Waste Services Agency to terminate his employment on Friday, June 28, 1996. However, plaintiff was given a hearing on Tuesday, June 25, 1996 to show cause why he should not be terminated. After that hearing, which was conducted by Assistant Director Jimmy Johnson, plaintiff was instructed to return to his work and that he would be informed on the final decision with regard to whether or not his employment would be terminated.
5. Later that same day on June 25, 1996, plaintiff was riding on the back of a garbage truck. It was his duty on that particular day to pick up the garbage that the two other men on the crew had dragged out to the curb. On that day the driver of the garbage truck backed over a curb and plaintiff fell off the truck landing on his left leg and side.
6. Plaintiff presented to Raleigh Urgent Care later on June 25, 1996 complaining of left leg and side pain with the most severe pain in the left groin area. Upon examination by Certified Physician's Assistant April Dixon, plaintiff was found to have mild tenderness in the groin area and was given anti-inflammatories and lifting restrictions of no greater than twenty-five pounds. Considering plaintiff's job generally required lifting of greater than twenty-five pounds, plaintiff was excused to be out of work for two days and then to return to Ms. Dixon.
7. Before plaintiff returned to Urgent Care he presented to Wake Medical Center on June 26, 1996. At that time he complained of a contusion to the left hip and pelvis and was ordered to return to work the following day. On June 27, 1996, plaintiff returned to Raleigh Urgent Care and indicated that he had been to the emergency room. On that date plaintiff requested Ms. Dixon to give him more time off work, and the physician's assistant wrote the plaintiff out of work for an additional couple of days even though he presented with a normal exam because plaintiff indicated that he was experiencing spasms in his groin and the side of his hip. Plaintiff was written out of work until July 1, 1996. Plaintiff was instructed to return to Urgent Care on July 1, 1996 but did not go for his appointment. Plaintiff was then called by Raleigh Urgent Care and indicated that he knew he was late and was on his way. However, plaintiff did not go to Raleigh Urgent Care until the next day, July 2, 1996 when he indicated that he had to drive a friend to Dunn. On July 2, 1996 when plaintiff presented to Raleigh Urgent Care, he indicated that he previously had a pilonidal cyst and that he thought it was flaring up again. Most of the "back" problems which plaintiff was reporting at that time were coming from the area of the reported pilonidal cyst. On July 2, 1996 plaintiff was told by the physician's assistant that his work-related groin injury was, in her opinion, resolved and that he could return to work the following day.
8. On July 3, 1996, plaintiff returned to work at his regular duties as a sanitation worker.
9. Plaintiff testified that at around 10:30 a.m. on July 3, 1996 he got off the truck and went to grab a gray barrel with trash. Plaintiff testified that as he attempted to lift it up, it was heavier than usual and he felt a muscle pull in his back. Plaintiff testified that he yelled and dropped the barrel. Plaintiff testified that Lonnie Lucas was driving the garbage truck on that day and that Mr. Lucas stopped the truck and parked it and came back to look for the plaintiff. Plaintiff testified that he told Mr. Lucas he had hurt his back trying to pick up the barrel and that he needed to take a minute to get his breath. Plaintiff testified that Mr. Lucas opened the door of the truck and helped put plaintiff inside and then drove the plaintiff to the main office. Mr. Lucas testified that he was not driving the garbage truck on the day in question and that he did not leave the job site and take plaintiff to the office. Furthermore, Mr. Lucas testified that when he spoke with plaintiff regarding his physical problems, the plaintiff did not say that he had hurt his back but rather that he had blood from his rectum area on his hands. Plaintiff indicated that his hemorrhoids were acting up. Mr. Lucas testified that after he had that conversation with plaintiff, he returned to the back of the truck and finished out the rest of the day.
10. On July 3, 1996 after plaintiff returned to the office, Mr. Andrews, his supervisor, took him to Raleigh Urgent Care and then to Wake Medical Center. Plaintiff presented to Wake Medical Center on July 3, 1996 complaining of a back strain with spontaneous hemorrhoid rupture. Plaintiff was treated for a hemorrhoid rupture and referred for surgical treatment for the hemorrhoid follow-up. At that time plaintiff was written out of work for five days.
11. Thereafter, plaintiff at his request was referred to Dr. Callaway, an orthopaedic surgeon, for a second opinion. Plaintiff presented to Dr. Callaway on July 23, 1996 complaining of low back pain. Plaintiff was diagnosed with a left low back strain/sprain based upon his complaints. Dr. Callaway recommended physical therapy three times a week for two weeks. Plaintiff did not complete that physical therapy as it was not approved by workers' compensation. Plaintiff was told that he could return to work on August 4, 1996 and given a return appointment for one month later. Plaintiff did not relate any injury of July 3, 1996 or any lifting incident to Dr. Callaway at any time, nor did plaintiff mention the possibility of any hemorrhoid or pilonidal cyst problems. Dr. Callaway based many of his opinions upon plaintiff's relation to him of the facts.
12. On August 20, 1996 plaintiff returned to Dr. Callaway and indicated that his pain had gradually improved since the last visit. At that time Dr. Callaway indicated that plaintiff had resolving low back pain and returned plaintiff to work at initially half days, starting full days on August 26, 1996. Plaintiff did not seek treatment by Dr. Callaway after August 20, 1996. Plaintiff was scheduled for a November 5, 1996 appointment but did not appear for that appointment.
13. At the hearing, plaintiff was wearing a back brace and testified that the brace had been prescribed for him by Dr. Callaway. Dr. Callaway testified that he did not prescribe such a brace for plaintiff.
14. Defendant-employer, through Jimmy Johnson, Assistant Solid Waste Services Director, learned that plaintiff had been released to return to work on August 4, 1996. Plaintiff was informed by Mr. Donald Jones that he should have reported to work on Monday, August 5, 1996 as he had been released by his doctor. Plaintiff was instructed to return to work on Wednesday, August 7, 1996. Plaintiff did not return to work on that date and on Monday, August 12, 1996, he was terminated after missing four consecutive unauthorized days.
15. Plaintiff missed less than seven days of work as a result of his June 25, 1996 work-related accident.
16. Plaintiff began employment with Blue Wing as a courier on January 7, 1997.
17. Based upon the Deputy Commissioner's findings regarding plaintiff's testimony and his demeanor at the hearing, and after reviewing the inconsistencies in his testimony along with the credible evidence of record, the Full Commission finds that plaintiff's testimony was not credible.
18. Since plaintiff's testimony is not accepted as credible, the evidence of record is insufficient to prove by its greater weight that plaintiff sustained a back injury by accident arising out of and in the course of his employment with defendant-employer or as a result of a specific traumatic incident of the work assigned on July 3, 1996. Furthermore, since plaintiff's testimony was not credible, the evidence of record is insufficient to prove by its greater weight that any complaints which plaintiff continued to have after July 2, 1996 were related to his June 25, 1996 compensable injury by accident.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On June 25, 1996, plaintiff suffered an injury by accident arising out of and in the course of his employment with defendant-employer when he injured his groin and left side. N.C.G.S. § 97-2(6).
2. Plaintiff missed less than seven days of work as a result of the June 25, 1996 accident and is thus entitled to no compensation under the North Carolina Workers' Compensation Act. N.C.G.S. § 97-28.
3. All medical bills related to plaintiff's June 25, 1996 injury by accident have been paid by defendant-employer. N.C.G.S. § 97-25.
4. By July 2, 1996, plaintiff had recovered from the consequences of his June 25, 1996 injury by accident. N.C.G.S. § 97-2(9).
5. On July 3, 1996, plaintiff did not sustain a back injury by accident arising out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-2(6).
6. Plaintiff is entitled to no compensation under the North Carolina Workers' Compensation Act. N.C.G.S. § 97-1 et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters following:
 ORDER
1. Under the law, plaintiff's claim for compensation must be, and the same is hereby, DENIED.
2. Each party shall bear its own costs except that defendant shall pay an expert witness fee of $110.00 to April G. Dixon, P.A..
 S/ _______________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ _____________________ LAURA K. MAVRETIC COMMISSIONER
S/ _____________________ DIANNE C. SELLERS COMMISSIONER